UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SYLVIA and GLADSTONE CLARKE,
individuals,

       Plaintiffs,

v.                                Case No.  6:13-cv-1250-Orl-22TBS

MIRACLE TEMPLE MINISTRIES, INC., a
Florida non-profit corporation,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

This case comes before the Court without oral argument on Defendant Miracle Temple Ministries, Inc.'s Motion to Dismiss Pursuant to Federal Rules of Civil Procedure. (Doc. 8).  For the reasons that follow, I recommend that the motion be granted in part and denied in part.

## BACKGROUND[1]

This case is before the Court based upon diversity jurisdiction.[2]  Plaintiffs Sylvia and Gladstone Clarke reside and maintain their domicile in the state of New York.  (¶ 2).  Defendant is a Florida not-for-profit corporation which owns and operates a Pentecostal Church in Osceola County, Middle District of Florida.  (¶ 1).  Bishop Ermine Stewart (the "Bishop") is Defendant's President and a member of its Board of Directors.  (Id.).  Plaintiffs allege:

---

[1] Unless a different source is indicated all Background facts are taken from Plaintiffs' complaint. (Doc. 1).

[2] Federal diversity subject matter jurisdiction exists where the matter in controversy (1) exceeds the sum or value of $75,000 exclusive of interest and costs and (2) is between citizens of different states.  See 28 U.S.C. § 1332(a).

In 1999, Defendant acquired title to a parcel of land ("Land") in Osceola County, Florida.  (¶ 6).  In 2009, Gladstone Clarke and the Bishop agreed that Plaintiffs would loan Defendant the money to build the Miracle Temple Church Edifice (the "Church") on the Land.  (¶ 7).  Gladstone Clarke also told the Bishop he would donate $100,000 from his deceased son's estate so that the Church could be built in memory of his son.  (Id.).  In December 2009, Plaintiffs gave the Bishop a draft of a promissory note evidencing a $400,000 loan, together with two checks, one for $400,000, the other for $100,000.  (Id.).  The draft note provided for 360 equal monthly installment payments of $3,163.17.  (¶ 8).  The $100,000 check was intended as a donation in Plaintiffs' son's name, but only upon full repayment of the $400,000.  (Id.).  If Defendant defaulted on the promissory note, the $100,000 would be treated as a loan.  (Id.).  The Bishop orally agreed to the note but Defendant never signed it.  (Id.).

During the last week of December, 1999, the Bishop told Sylvia Clarke that Defendant would not be able to make the first payment on the unsigned promissory note.  (¶ 9).  Plaintiffs agreed to change the payment due date to give Defendant more time but, instead of revising and signing the note, the Bishop returned the $400,000 check and draft note to Plaintiffs.  (Id.).  The Bishop asked Plaintiffs to hire and pay a contractor to build the Church, assuring and promising them that Defendant would pay them back.  (Id.).  Because the Bishop had been their pastor for approximately 35 years, Plaintiffs trusted him.  (¶ 10).

In October, 2010, Plaintiffs agreed to pay B&D Property Solutions, LLC ("B&D") $720,000 to build the Church.  (¶ 11).  They paid B&D an initial deposit of

$50,000 and later, a second deposit of $59,000.  (Id.).  When B&D asked for an additional $10,800 because it had underbid the contract Plaintiffs refused.  (Id.). The Bishop urged Plaintiffs to pay the money to avoid a breach of contract claim for which Defendant would be responsible.  (Id.).  Then, Plaintiffs and B&D agreed on payment of $8,800 plus a $2,000 credit.  (Id.).  Plaintiffs also paid B&D on a subsequent invoice for $7,993.50.  (¶ 12).  In 2011, without Plaintiffs' knowledge, the Bishop signed a new contract with B&D which required another 15% deposit. (¶ 13).  When Plaintiffs learned what the Bishop had done, they refused to pay another deposit and B&D ceased work on the Church.   (Id.).

There was a "problem" with the $100,000 check and Plaintiffs ended up providing Defendant $85,000 which they believe was used for architectural and engineering work on the Church.  (¶ 9).

In August 2011, Plaintiffs engaged Alan L. Ulch, Inc. ("AUI") to finish construction of the Church for $1,058,840.  (¶ 14).  The construction was completed in 2012.  (Id.).  Ultimately, Plaintiffs paid a total of $1,398,000 to construct, furnish, and insure the Church, pay impact fees and employ lawyers to pursue B&D.  (¶ 15). Plaintiffs consider this money a loan to Defendant which they expect to be repaid. (¶ 16).  On October 17, 2012, the Bishop announced to the Church membership, including Plaintiffs, that the money Plaintiffs provided was a gift, not a loan.  (Id.).

On December 31, 2012, Defendant sent the following letter ("Letter") to Plaintiffs:

> Dear Dr. Sylvia Clarke.
>
> This Letter of Commitment is to let you know how grateful we are to you for the good deed you have done.

We thank God for you, as you were led by the Lord to build such a beautiful sanctuary in memory of your son Anthony Clarke, located at 4930 Old Pleasant Hill Road, in the city of Kissimmee, of Osceola County, in the State of Florida, with the following legal description:

Located on Parcel # 1 8-27-29-4811-0001 -50 Lot 5, Reedy Creek Estates, as recorded in Plat Book 8, Pages 11 and 12  of the Public Records of Osceola County, Florida, lying in Section 18, Township 27 South, Range 29 East.

In the event of the death of Gladstone Clarke and Sylvia Clarke, we will make monthly payments to Dr. Sharonette Clarke and Caleb Thomas.

We must here say that the Miracle Temple Ministries, Inc. will refund you $1.4 million that you have spent to build the sanctuary. We may further say that we will refund you five thousand dollars ($5000.00 US) monthly starting January 31, 2013 until you are fully refunded.

May the God of heaven continue to bless you in all your endeavors.

Yours truly,

(Doc. 1-1 at 4) (Emphasis in original.).  The Letter is notarized and signed by the

Bishop, the Church Secretary, and two Deacons.  (Id.).

Defendant paid Plaintiffs $5,000 in January, February and March, 2013.  (¶¶

18-20).  After the March payment, Defendant informed Plaintiffs that nothing was

owed because they had made a gift, not a loan.  (¶¶ 21-22).  Plaintiffs bring this

action for the imposition and foreclosure of an equitable lien; unjust enrichment;

money lent; and fraud.

Defendant has filed a motion to dismiss on the ground that under the

ecclesiastic abstention doctrine the Court does not have subject matter jurisdiction;

there is no legal basis for the imposition and foreclosure of an equitable lien; the

Letter is not actionable because it lacks consideration; and Plaintiffs have not

-4-

alleged fraud with the required specificity.  (Doc. 8).  Defendant has attached the

following documents to its motion:

(1) The affidavit of Church pastor Delroy Bennett who states that he

understood Plaintiff's were making a gift, they never said they were making a loan,

and Sylvia Clarke only demanded the return of the money when the Bishop refused

to make her pastor of the Church.  (Doc. 8-1, pp. 2-3).

(2) The affidavit of Defendant's Secretary, Ruth Lashley who states that

Sylvia Clarke told the congregation she signed a contract to build the Church in

memory of her son who had died accidentally, and that she was financing the

project with her own money as a gift to the Lord.  Ms. Lashley never heard Sylvia

Clarke say she was making a loan, but Mrs. Clarke did express her desire to be

pastor of the Church.  (Id., pp. 4-5).

(3) The affidavit of Noel Thomas who is a member of Defendant's Board of

Directors.  He heard Sylvia Clarke tell the congregation she was building the

Church in memory of her son, who died accidentally.  Mr. Thomas understood

Plaintiffs were making a gift, he never heard them refer to the money as a loan, and

Sylvia Clarke has expressed to him, her desire to be a pastor of the Church.  (Id., p.

6).

(4) The Church Dedication Booklet which states that the Church was

dedicated in memory of Plaintiffs' deceased son, Anthony Clarke.  (Id., pp. 9-10).

(5) The Profile of Dr. Sylvia Clarke, Th.D., which refers to her as a

philanthropist.  The Profile includes examples of her charitable giving and states

that she has made "thousands of financial donations from [Plaintiffs'] son's estate to [Defendant]." (Id., pp. 10-11).

(6) The Profile of Deacon Gladstone Clarke.  (Id., pp. 15-16).  This Profile states that sometime after his son's death, Mr. Clarke had an epiphany in which he heard his son's voice tell him to "Go and build a church for the children and feed them." (Id., p. 16).  According to the Profile, "In response to this vision Deacon Clarke and his wife, Dr. Sylvia Clarke decided to commit $1.4 million from their son's estate to build this sanctuary, which by the grace and mercy of God, we are dedicating today." (Id.).

In their response to the motion to dismiss, Plaintiffs argue that the ecclesiastic abstention doctrine is inapplicable and does not divest the Court of jurisdiction to hear the case. (Doc. 14 at 5-11).  Plaintiffs also maintain that the motion should be denied because they have "unquestionably stated claims" for relief against Defendant. (Id. at 11- 12).  Plaintiffs implore the Court to reject the exhibits to Defendant's motion because "they contain facts that are outside of the four corners of the Complaint." (Id. at 12-13). Citing Federal Rule of Civil Procedure 12(b)(6), Plaintiffs argue that they adequately state claims for the imposition and foreclosure of an equitable lien, money lent, and fraud.  (Id. at 13- 18).  Moreover, Plaintiffs reject Defendant's argument that the Letter has no legal effect because it was not supported by consideration. (Id. at 15-16).

## LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(6): Failure to State a Cause of Action

To survive a 12(b)(6) motion to dismiss, a complaint must contain a "short and plain statement showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting FED. R. CIV. P. 8(a)(2)).  The complaint must aver sufficient facts which, accepted as true,"state a claim to relief that is plausible on its face." Id. (quoting Bell Atlantic corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted).  Detailed factual allegations are not required, but labels and conclusions, mere naked assertions, or formulaic recitations of the elements of a cause of action are not sufficient.  Id. at 678 (citing Twombly, 550 U.S. at 555).

In ruling on a motion to dismiss, the Court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (11th Cir. 2007).  All well pled factual allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party.  Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006).  However, the Court does not have to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  Iqbal, 556 U.S. at 678.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. (citation omitted).

B. FED. R. CIV. P. 12(b)(1): Lack of Subject Matter Jurisdiction

-7-

Subject matter jurisdiction must be affirmatively shown in the record before considering the merits of any case.  Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005) (citing Steel Co. v. Citizens for a Better Evn't, 523 U.S. 83, 94 (1998)).  Under Federal Rule of Civil Procedure 12(b)(1), a party may bring either a facial or factual challenge to a court's subject matter jurisdiction.  See Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (addressing a factual attack to the court's subject matter jurisdiction for a claim brought under the Federal Tort Claims Act).

In a facial challenge, the court assumes all of plaintiff's allegations are true and determines whether plaintiff has alleged a sufficient basis for subject matter jurisdiction.  Id. at 1529.  In a factual challenge, the court must determine if it has power to hear the case.  Id.  The Eleventh Circuit has explained that when it is confronted with a factual challenge, the court may consider "matters outside the pleadings, such as testimony and affidavits . . . ."  Id. (quoting Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)).  When a factual attack also implicates an element of the cause of action, jurisdictional dismissals should be allowed "only in those cases where the federal claim is clearly immaterial or insubstantial."  Id. (quoting Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)).

C.  FOUR CORNERS OF THE COMPLAINT

Ordinarily, in deciding a motion to dismiss, the Court is limited to consideration of the four corners of the complaint.  Bickley v. Caremark RX, Inc., 461 F.3d 1325, 139 n.7 (11th Cir. 2006).  However, the Eleventh Circuit has

"adopted the 'incorporation by reference' doctrine, under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (internal citation omitted).  Undisputed means the plaintiff does not challenge the authenticity of the document.  Id.

ANALYSIS

    A. FED. R. CIV. P. 12(b)(1)

    Defendant argues that the ecclesiastical abstention doctrine divests this Court of subject matter jurisdiction over this case.  (Doc. 8 at 6-10). The ecclesiastical abstention doctrine "precludes a court from hearing cases where questions of discipline, faith, ecclesiastical rule, custom, or law" are involved. Ogle v. Hocker, No. 02-73200, 2012 WL 3779014, at *3 (E.D. Mich. Aug. 31, 2012). Defendant maintains that the facts of this case place it within the ambit of the doctrine because it is a property dispute that requires the interpretation of religious doctrine.  I disagree.  This case involves contract interpretation as well as the intentions, expectation, and obligations of the parties.  It does not – as a core issue – involve any questions of "[religious] discipline, faith, ecclesiastical rule, custom, or law." See 66 AM. JUR. 2D Religious Societies § 14 (2014) (citing U.S. CONST. amend. I; Johnson v. Antioch United Holy Church, Inc., 714 S.E.2d 806 (N.C. Ct. App. 2011)).  Defendant argues that the Church's "decision to not appoint Plaintiff, Sylvia Clark pastor is the basis of this lawsuit." (Doc. 8 at 2).  This is not fact, nor is

it an adequate basis for a motion to dismiss.  It is an unsupported supposition that is irrelevant to the Court's consideration.

Defendant cites to Serbian E. Orthodox v. Milivojevich, 426 U.S. 696, 706 (1976), but the case is distinguishable from the instant matter.  In Serbian, the determination of property rights was inextricably linked to who occupied a particular position, specifically the Diocesan Bishop.  Id.  The Court declared that "[The resolution of the religious dispute over Dionisije's defrockment therefore determines control of the property."  Id. at 709.  The Supreme Court reasoned that "The First Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine."  Id. (quoting Presbyterian Church v. Hull Church, 393 U.S. 440, 449 (1969)).  That is not the case here.  Regardless of Plaintiffs' religious position (or title), the basis of this lawsuit is their claim that the money they provided to build the Church was a loan, not a gift.

Defendant also cites to Crowder v. S. Baptist Conv., 828 F.2d 718, 726 (11th Cir. 1987), the facts of which dramatically differ from the this case. Crowder involved a dispute over a parliamentary ruling at the Southern Baptist Convention. Appellants sought a declaration as to the proper construction of the bylaws in question and the proper appointment of certain "messengers" at the convention. 828 F.2d at 718-19.  This case does not involve a dispute over church doctrine or rules.  This case is also fundamentally different from Gellington v. Christian Methodist Episcopal Church, 203 F.3d 1299, 1303 (11th Cir. 2000) (the underlying issue focused on the ministerial exception to Title VII's employment mandates) and

<u>McClure v. Salvation Army</u>, 460 F.2d 553, 558-59 (5th Cir. 1972) (company's decisions affecting religious employee).

Despite Defendant's assertions, the controversy currently before the Court does not involve church administration or religious doctrine, and it does not otherwise trigger the ecclesiastic abstention doctrine.  Therefore, the Court is not divested of subject matter jurisdiction.

B. <u>F<span>ED</span>. R. C<span>IV</span>. P. 12(b)(6)</u>

1. *Imposition and Foreclosure of Equitable Lien*

Under Florida law, an equitable lien may only be imposed "(1) upon written contract that indicates an intention to charge particular property with debt or obligation; or (2) upon declaration by the court, out of general considerations of right or justice, as applied to particular circumstances of case."  <u>Williams v. Aloisi</u>, 271 B.R. 676, 683 (M.D. Fla. 2002).  An equitable lien against real estate is typically declared "when the claimant has furnished funds for improvement of land with the knowledge and consent of the owner."  <u>Wagner v. Roberts</u>, 320 So. 2d 408, 410 (Fla. 2d DCA 1975) (citing <u>Carter v. Suggs</u>, 190 So.2d 784, (Fla. 1st DCA 1966)).  An equitable lien is appropriate where "there is either an absence of an available lien or no adequate remedy at law."  <u>Peninsular Supply Co. V. C.B. Day Realty of Florida, Inc.</u>, 423 Fo.2d 500, 502 (Fla. 3d DCA 1982).

Plaintiffs do not contend that they possess a written contract that evinces an intention to charge the Land with any debt or obligation.  Rather, they invite the Court to declare that an equitable lien is appropriate given the facts and circumstances of this particular case.  (Doc. 1 ¶¶ 24-31).  Plaintiffs allege that they

loaned money to Defendant for the construction of the Church on the Land, that Defendant had knowledge of same, that Defendant failed to repay Plaintiffs, and that Plaintiffs do not have an adequate remedy at law. (Id. ¶¶ 26-27, 29).

Plaintiffs' allegations sufficient to establish a claim for the imposition of an equitable lien. Accordingly, I respectfully recommend that Defendant's motion to dismiss this portion of the claim be **denied**. However, foreclosure is a mechanism by which an equitable lien is enforced. Chmil v. Rulisa Operating Co. (In re Tudor Assocs.), 20 F.3d 115, 118 (4th Cir. 1994). Plaintiffs' cause of action for foreclosure of an equitable lien is premature until such time as the Court has decreed a lien to enforce. Therefore, the motion to dismiss the cause of action for *foreclosure* of an equitable lien should be **granted**.

2. *Unjust Enrichment*

To sustain a cause of action for unjust enrichment, a plaintiff must show (1) that he conferred a benefit upon the defendant; (2) that defendant acknowledges, voluntarily accepts, and retains the benefit; and (3) that "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Nationwide Mut. Co. v. Ft. Myers Total Rehab Cntr., 657 F. Supp. 2d 1279, 1290 (M.D. Fla. 2009) (citing Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp, 899 So.2d 1222, 1227 (Fla. 1st DCA 2005)); see also Butler, Inc. v. Trizec Prop., Inc., 524 So.2d 710, 712 (Fla. 2d DCA 1988).

Plaintiffs allege that they conferred a benefit on Defendant by lending it the money to construct the Church; and by paying contractors for the construction of

-12-

the Church.  (Doc. 1 ¶¶ 5, 32-37).  They further allege that Defendant had "direct

knowledge" of the loan and voluntarily accepted and retained the benefit of the loan

by asking Plaintiffs to pay the contractors for the construction of the Church on the

Land; promising to repay Plaintiffs the funds paid to said contractors; and

possessing and using the Church without repaying the loan to the Plaintiffs.  (Id. ¶

36).  Lastly, Plaintiffs allege that because they paid for the construction of the

Church on the Land "based on [Defendant's] request and promise to repay same, it

would be inequitable for [Defendant] not to repay [Plaintiff] the funds that they spent

to construct the [Church]."  (Id. ¶ 36).  Plaintiff's averments are sufficient at the

pleading stage to sustain a claim for unjust enrichment.  Accordingly, I respectfully

recommend that Defendant's motion to dismiss this claim be **denied**.

     3. *Money Lent*

     To sustain a cause of action for money lent, a plaintiff must show that "(1)

money was delivered to the defendant, (2) the money was intended as a loan, and

(3) the loan has not been repaid."  Wane v. Loan Corp., 926 F. Supp. 2d 1312,

1324 (M.D. Fla. 2013).  Plaintiff has pled the basic elements of the money lent

cause of action (Doc. 1 ¶¶ 8-11, 16-22, 38-41) and I respectfully recommend that

the motion to dismiss this claim be denied.

     4. Fraud

     To sustain a cause of action for fraud, a plaintiff must allege: " (1) a false

statement of fact; (2) known by the defendant to be false at the time it was made;

(3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4)

action by the plaintiff in reliance on the correctness of the representation; and (5)

resulting damage or injury ... In addition, plaintiff's reliance on the representation

must be reasonable." Jaffe v. Bank of America, N.A., 667 F. Supp. 2d 1299, 1321

(S.D. Fla. 2009).  Under the federal rules, a pleading that contains allegations of

fraud is subject to a heightened pleading standard.  See FED. R. CIV. P.  9(b).   Rule

9(b) provides:

> In alleging fraud or mistake, a party must state with particularity
> the circumstances constituting fraud or mistake. Malice, intent,
> knowledge, and other conditions of a person's mind may be
> alleged generally.

Id.  Generally, rule 9(b) may be satisfied if the complaint sets forth:

> (1) [P]recisely what statements were made in what documents
> or oral representations or what omissions were made, and

> (2) [T]he time and place of each such statement and the
> person responsible for making (or, in the case of omissions,
> not making) the same, and

> (3) [T]he content of such statements and the manner in which
> they misled the plaintiff, and

> (4) [W]hat the defendants obtained as a consequence of the fraud.

Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir.

1997).

Plaintiffs allege that the Bishop, acting on behalf of Defendant, agreed to

repay Plaintiffs the funds.  Plaintiffs rely on the Letter in support of their fraud

claim.[3]  The Letter is notarized and signed by the Bishop, Church Secretary, and

two Deacons.  It contains a description of the Land, an accounting of the amount of

---

[3]The Court's consideration of the Letter is proper because it was incorporated by reference
into the Complaint.  See La Grasta, 358 F.3d at 845; see also Tellabs, 551 U.S. at 323; Horsley, 304
F.3d at 1134.

money contributed by Plaintiffs, and a payment schedule.  (Doc. 1-1 at 4) .  I find that the Letter satisfies all four prongs of the 9(b) pleading standard as outlined in Blue Cross & Blue Shield.  Accordingly, I respectfully recommend that Defendant's motion to dismiss this claim be **denied**.

RECOMMENDATION

In view of the foregoing, it is respectfully RECOMMENDED that Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure be GRANTED to the extent it seeks to dismiss Plaintiffs' cause of action for foreclosure of an equitable lien.  Further, it is respectfully RECOMMENDED that the motion be DENIED in all other respects.

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

IN CHAMBERS in Orlando, Florida, on March 5, 2014.

THOMAS B. SMITH
United States Magistrate Judge

Copies to:

Presiding United States District Judge
Counsel of Record